**The STATE of Ohio, Appellee,**

**v.**

**BRISCOE, Appellant.** ▮

[Cite as *State v. Briscoe* (1992), 84 Ohio App.3d 569.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61200.

Decided Dec. 28, 1992.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Kevin Cafferkey,* Assistant Prosecuting Attorney, for appellee.

*Kenneth A. Bossin,* for appellant.

NAHRA, Presiding Judge.

Clyde Briscoe, defendant-appellant, appeals his conviction of one count of attempted patient abuse under R.C. 2903.34 and 2923.02.

From October 1989 to March 1990, Clyde Briscoe was employed as a habilitation aide at the Northeast Care Center ("Northeast"), an institution for mentally retarded people located in North Royalton, Ohio. Employees at Northeast take

care of the mentally retarded and work to improve the daily living skills of their patients.

On March 14, 1990, Lynn Johnson, Briscoe's co-employee at Northeast, walked into a bathroom at Northeast and discovered Stephen Bremmer, a mentally retarded patient, alone. Bremmer had been unattended for some time; Johnson observed him standing in the bathtub and urinating into the tub. Johnson testified that under no circumstances were patients to be left alone, since they might hurt themselves. Clyde Briscoe was Bremmer's attendant and responsible for watching him.

Upon learning of the lack of care given to Bremmer, Lynn McNeely, the house manager at Northeast, commenced an investigation. She discovered that Briscoe had struck Bremmer with a belt on January 21, 1990. Briscoe had explained to Johnson that Bremmer's father often spanked his son when he acted up. Johnson smelled alcohol on Briscoe's breath at such time and observed Briscoe carrying a plastic drinking bottle which contained gin when he left the building. Johnson expressed her reluctance to testify because of threats Briscoe had made to her.

On January 24, 1990, Laurie Leasure, a Northeast habilitation supervisor, saw Briscoe in the kitchen; Briscoe asked her to handle Eugene Lascone, a patient, because he could not get Lascone into bed. Leasure then walked over to Lascone; Lascone, who cannot speak, made choking signals and punching signs and pointed at Briscoe. Leasure also observed a cut on Lascone's forehead. Leasure called for a nurse after speaking with Briscoe.

McNeely's investigation revealed that another incident occurred between Briscoe and an autistic patient, Brian Scott Harmon. On March 12, 1990, Harmon was making a fuss in the kitchen when Briscoe pushed him against the wall. When Harmon turned around, Briscoe pushed him again.

Finally, McNeely's investigation revealed another incident on January 6, 1990 for which Briscoe was convicted. On such day, Jackie Bryan Wright, Briscoe's co-employee, was cooking dinner when she heard commotion in the back of the house. Ron Kmiecik, a slim, five-foot, two-inch mentally retarded patient was having a behavior problem. Briscoe threw Kmiecik down and began choking him. Briscoe's knees pinned Kmiecik's arms and Briscoe's hands were around Kmiecik's throat. Wright yelled at Briscoe, but he did not respond. Eventually, Briscoe got off Kmiecik; Briscoe and Wright then went back to work. Briscoe later threatened Wright that she better not report him, to which she complied.

On June 12, 1990, Briscoe was indicted for four counts of patient abuse pursuant to R.C. 2903.34. On November 26, 1990, a bench trial ensued and a variety of witnesses testified on behalf of the state. At the end of the state's

case-in-chief, Briscoe made a motion for acquittal pursuant to Crim.R. 29(A). The trial court stated that it was inclined to grant Briscoe's motion, since none of the patients suffered physical harm. However, shortly thereafter, the trial court amended the indictment to four counts of attempted patient abuse and overruled Briscoe's motion. Briscoe proceeded to present his case.

The trial court found Briscoe guilty of one count of attempted patient abuse and not guilty of the remaining three counts of attempted patient abuse.

In December 1990, the trial court sentenced Briscoe to six months of imprisonment, which it suspended and placed him on probation for one year. This appeal follows.

I

Appellant's first assignment of error states:

"The trial court erred in allowing the prosecutor to present any additional information after the court had granted defendant's motion for acquittal."

Briscoe contends that the trial court erred by allowing the state to present additional evidence after the trial court had announced its decision to grant his motion for acquittal pursuant to Crim.R. 29.

A review of the record reveals that the state did not present any additional evidence. Instead, the state merely made the trial court aware of the attempt statute pursuant to the trial court's request. The trial court's initial announcement of its inclination to grant Briscoe's motion for acquittal did not constitute a final judgment, since the trial court did not sign an order to that end. *State v. Benson* (1985), 29 Ohio App.3d 321, 29 OBR 448, 505 N.E.2d 987, paragraph one of the syllabus. The trial court proceeded to overrule the motion for acquittal and allowed Briscoe to present evidence in defense of the amended charge of attempted patient abuse. Since the trial court's announcement of its inclination to grant the motion for acquittal was not a signed, final order and because no additional evidence was presented by the state, the trial court did not commit any error.

Briscoe's assertion that the trial court erred when it amended the indictment during trial and thereby precluded him from preparing adequately for the charge of attempted patient abuse lacks merit. Under Crim.R. 7(D), the original indictment can be amended during trial if the amended charge is a lesser included offense of the original charge. See *Middletown v. Blevins* (1987), 35 Ohio App.3d 65, 67, 519 N.E.2d 846, 849; see, also, *State v. Morris* (1982), 8 Ohio App.3d 12, 8 OBR 13, 455 N.E.2d 1352. We find that the amended charge of attempted patient abuse is a lesser included offense of patient abuse, since under

the lesser offense of attempted patient abuse the element of actually causing serious physical harm to a patient need not be proved. Accord *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. We also do not find that Briscoe lacked adequate notice of the offense with which he was charged such that he was unable to prepare an adequate defense.

Appellant's assignment of error lacks merit and is overruled.

## II

Appellant's second assignment of error states:

"The trial court erred in finding appellant guilty of attempted patient abuse in that the verdict was unsupported by the evidence."

Briscoe appears to argue that the evidence was insufficient to convict him of attempted patient abuse and that the verdict was against the weight of the evidence. Briscoe contends that he did not intend to cause any harm to the patients and that his actions constituted a reasonable means to restrain them.

The weight to be given evidence and the credibility of witnesses are determinations to be made by the trier-of-fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the trier-of-fact to find a defendant guilty beyond a reasonable doubt, this court will not reverse a guilty verdict based on manifest weight of the evidence. *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239. When reviewing the sufficiency of evidence to support a criminal conviction, an appellate court's function is to examine the evidence to determine if such evidence would convince the average mind of defendant's guilt beyond a reasonable doubt. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

R.C. 2903.34, which constitutes the crime of patient abuse, states in pertinent part:

"(A) No person who owns, operates, or administers, or who is an agent or employee of a care facility shall do any of the following:

" * * *

"(2) Commit abuse against a resident or patient of the facility[.]"

R.C. 2903.33(B)(2) defines the term "abuse" as follows:

"(2) 'Abuse' means knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person or by inappropriate use of a physical or chemical restraint, medication, or isolation on the person."

R.C. 2901.22 provides that:

"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

R.C. 2923.02 defines "attempt" and states:

"(A) No person, purposely or knowingly, and when purpose and knowledge is sufficient culpability for the commission of an offense shall engage in conduct which, if successful, would constitute or result in the offense."

A "criminal attempt" is an act that is a substantial step in a course of conduct planned to culminate in the commission of a crime. A substantial step is one that strongly corroborates criminal purpose. *State v. Woods* (1976), 48 Ohio St.2d 127, 2 O.O.3d 289, 357 N.E.2d 1059, paragraph one of the syllabus, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 1153.

Our review of the record indicates that there was sufficient evidence to convict Briscoe of one count of attempted patient abuse beyond a reasonable doubt. Jackie Bryan Wright testified that she observed Briscoe using his knees to pin the arms of Ron Kmiecik, a diminutive patient at Northeast. Briscoe had his hands around Kmiecik's neck and was choking him. Wright testified that Briscoe did not respond to her requests that he cease choking Kmiecik and get off him. Instead, Briscoe continued to apply pressure to Kmiecik and acted as though he were in a trance. Such action constituted a substantial step toward the commission of patient abuse. We find that there was sufficient evidence to find Briscoe guilty of attempted patient abuse and that the verdict was not against the manifest weight of the evidence.

Appellant's assignment of error is overruled.

While not raised by Briscoe, it appears the trial court erred during the sentencing phase. The relevant journal entry filed on January 7, 1991 indicates that the trial court based Briscoe's sentence on a conviction of four counts of attempted patient abuse when his conviction consisted of one count of attempted patient abuse. For this reason, we find plain error and reverse and remand for resentencing.

Accordingly, the judgment of the trial court is affirmed in part and reversed and remanded in part.

*Judgment accordingly.*

KRUPANSKY, J., concurs.

HARPER, J., dissents.

HARPER, Judge, dissenting.

I respectfully dissent from the majority's lack of concern that an otherwise law-abiding citizen with no criminal purpose is permanently scarred with a criminal record because it is convenient.

## I

There are too many things inherently unjust about Briscoe's conviction which the Due Process Clause of the Fourteenth Amendment to the United States Constitution mandates that we declare his trial unconstitutional and reverse his conviction. The Due Process Clause mandates that the state must give a criminal defendant fair notice of the charges against him to permit adequate preparation of his defense. *Koontz v. Glossa* (C.A.6, 1984), 731 F.2d 365 (where the court reversed defendant's conviction because an amendment to an indictment was granted three days prior to trial). While Crim.R. 7(D) provides for amendment to a criminal indictment, an amendment which violates due process rights of a defendant is void. As stated by the court in *Middletown v. Blevins* (1987), 35 Ohio App.3d 65, 519 N.E.2d 846, paragraph two of the syllabus. "An amendment to a charging instrument which changes the name or identity of the offense charged is forbidden by Crim.R. 7(D)." In the instant case, the record of the indictment is evident that the amended indictment is not the same as the original indictment. Therefore, absent a waiver by the defendant, the state was required to serve him with a new charging instrument.

Another reversible error in the within case is the trial court's acceptance of an amendment to the indictment after the court acquitted Briscoe on the original indictment. This court's affirmance of the trial court's error is even more scary than the error itself because of the far-reaching implications a decision of this magnitude carries in our criminal jurisprudence. The majority, in defense of its holding while citing *State v. Benson* (1985), 29 Ohio App.3d 321, 29 OBR 448, 505 N.E.2d 987, states:

"Since the trial court's announcement of its inclination to grant the motion for acquittal was not a signed, final order and because no additional evidence was presented by the state, the trial court did not commit any error."

*Benson* is not dispositive of this case because *Benson* dealt with the issue of whether the trial court granted the defendant's motion for continuance without a journal entry or record evidencing such a grant. This failure to journalize the continuance, the court concluded, was in direct violation of R.C. 2945.72(H) and case law. See *State v. Geraldo* (1983), 13 Ohio App.3d 27, 13 OBR 29, 468 N.E.2d 328.

A motion for continuance is a procedural matter which is handled before trial on the merits and is nothing to be compared to an acquittal of a defendant at the close of the state's evidence. In the instant case, the trial court's announcement of acquittal is on the transcript of record and no formal journal entry is required before the constitutional prohibition against double jeopardy can attach. The trial court held:

"I repeat with the utmost reluctance that I am compelled to grant the defendant's motion. In so doing I must note that the defendant is also being denied an opportunity to present his case. I noted that I believe the state has made a prima facie case, but without the defendant having an opportunity to present his case, society and the victims here, and the Court will never know whether these incidents occurred as the state's witnesses claimed.

"However, under the rule, *I believe I must grant the motion, the defendant is found not guilty,* but neither will he have an opportunity to be exonerated if, that, in fact, would have been the case. Are there any questions?" (Emphasis added.)

The jury cannot be permitted within our criminal jurisprudence to announce a non-guilty verdict based on the evidence before it and then change its mind after the verdict, because the trial court did not formally journalize its verdict. The trial court cannot be held to a lesser standard than the jury when it wears two hats (as a judge and jury). As the United States Supreme Court held in *United States v. Kopp* (1976), 429 U.S. 121, 121, 97 S.Ct. 400, 401, 50 L.Ed.2d 336, 336, "The fact that the dismissal of the indictment here occurred after a general finding of guilty rendered by the court in a bench trial, rather than a return of a verdict by a jury is immaterial." There is, therefore, no requirement statutorily, or otherwise, that the trial court sign the acquittal motion before it is given a legal effect, because in every trial, journalization comes after trial, and by then the defendant is either in jail or free. Also ignored in the majority opinion is the trial court's attempt to circumvent Crim.R. 29, which forbids a trial court from reserving a ruling on a motion for acquittal made at the close of the state's case. Crim.R. 29(A) provides as follows:

"(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a

conviction of such offense or offenses. *The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."* (Emphasis added.)

It is obvious that when the court announced the acquittal of appellant, it was final as it was not required to reserve ruling on appellant's motion pending the state's finding of case law that authorized the amendment of the original indictment from patient abuse to attempted patient abuse.

The majority further opined that affirmance was in order because "no additional evidence was presented by the state." This argument is intended to diffuse any contention that the state violated the Double Jeopardy Clause when appellant was retried for attempted patient abuse. But I am not persuaded. When the court accepted the state's amendment after appellant's acquittal for a crime of patient abuse, the new charge of attempted patient abuse is a separate and distinct charge from the original crime of patient abuse. The state's failure to present evidence further compounded the error. The state, if it intended to use the evidence it originally presented, could and should have amended its complaint before a verdict of acquittal was announced by the court. When it amended the indictment to a different crime, it was an error to permit the defendant to have to prove himself innocent of the crime charged, as it is the state which has the burden of proving attempted patient abuse beyond a reasonable doubt. So the essence of what the state did was, "your honor we refer you to our previous evidence which you said was insufficient to convict him of patient abuse, we present it again by reference in its entirety." Therefore, whether it was presented anew in the new indictment of attempted patient abuse, or by reference, the result is the same, appellant was tried again after his acquittal, to his prejudice. Double jeopardy does not require that additional evidence be presented, by the state; the clause forbids a defendant from being tried again after an acquittal. It does not matter whether the state presented additional evidence or the defendant as in this case is required to prove himself innocent. There is nothing shown by the state in the record to support its claim that attempted patient abuse is an offense at law as stated by the trial court. See *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. Appellant's retrial violated the Sixth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution and should not have been allowed to stand.

## II

Appellant, in his second assignment of error, argues that the verdict was against the manifest weight of the evidence. I agree. A conviction that is against the weight of the evidence must be reversed and remanded for a new trial. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652.

The Ohio Constitution authorizes this court in Section 3(B)(3) to independently weigh the evidence when such error is assigned. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In State ex rel. Squire v. Cleveland (1948), 150 Ohio St. 303, 345, 38 O.O. 161, 177, 82 N.E.2d 709, 729, the Ohio Supreme Court held that the court of appeals "has the authority and duty to weigh the evidence and to determine whether the findings of * * * the trier of the facts were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial."

R.C. 2923.02 defines "attempt" as follows:

"(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

Bearing in mind that action is not criminally punishable as an attempt to commit a particular crime unless the accused had the intent to commit that crime, State v. Curry (1975), 43 Ohio St.2d 66, 72 O.O.2d 37, 330 N.E.2d 720, let us review the evidence adduced at trial. Appellant's employment requires taking care of mentally retarded patients who are sometimes violent. Appellant was required to restrain a patient with a behavioral problem to prevent the patient from self-inflicting injury and/or injuring others. There is no objective definition of "restraining" and no guideline was set forth by the appellant's employer, which leaves one interpretation that an employee short of injuring a patient does what is necessary to restrain the patient from injuring himself and/or others. The majority stresses the size of the patient in question as if there is a separate standard for restraining a violent midget than for a violent giant. The person restraining does what is necessary to prevent injury. There is absolutely no evidence of Briscoe's intent to injure the patient. The only evidence was that appellant pinned Kmiecik down and choked him. The employee who testified that she saw appellant choke the patient stood there and did nothing. She did not see it fit to go to the patient's rescue; instead, she asked Briscoe to stop. The other evidence worth mentioning was that Briscoe stopped when Jackie Bryan, who was supposedly afraid of Briscoe, came up. If Briscoe intended to hurt the patient, surely he was not going to stop when a lady who was afraid of him came up and stood there, without saying a word to him. This evidence I find rather incredible.

What is obvious from the record after a careful review is that the court was presented over objection with evidence of other acts which were irrelevant to the crime of patient abuse or attempted patient abuse and highly prejudicial. The state presented evidence of appellant's telling other employees that he would kill everybody at the center and be the next black Charles Manson. The white Charles Manson did not kill retarded patients and I find it also incredible that the

same employees who testified that they were afraid of Briscoe were privy to his very intimate thought of being a black Charles Manson. I would think that it is a conversation rather reserved to close friends and associates, since it was not presented as a threat.

The state further introduced testimony of an employee who testified that Briscoe had said that he was an expert in martial arts. Briscoe was an ex-Marine and martial arts is a part of Marine training, and I do not see how that makes him an evil man who is out to injure patients that he has worked with for months and had ample opportunity to have injured if he so intended. The state also presented testimony that Briscoe carried a knife. The knife was later discovered to be a Red Cross Swiss Army knife that has a can opener, nail file, toe nail clipper, etc., and even known to be carried by chief executives of corporations in this country and other citizens, including the President of the United States, George Bush. See The Plain Dealer, Nov. 4, 1992. I cannot see the relevance of all this testimony other than to inject prejudice and paint appellant as a maniac, thereby shelving aside what he was indicted for.

I find it disturbing that this court can easily be seduced into accepting incredible, unproved, uncertain, unreliable, irrelevant and highly prejudicial evidence just to affirm a conviction of an innocent citizen. See *State v. Mattison* (1985), 23 Ohio App.3d 10, 23 OBR 43, 490 N.E.2d 926.

Having found that the weight of the evidence does not support the verdict, and more so, that the attempt statute is inapplicable in the instant case, I will also reverse on appellant's second assignment of error.