OPINION
This matter presents a timely appeal from a judgment rendered by the Jefferson County Common Pleas Court, finding defendant-appellant, John Chris Vich, guilty of involuntary manslaughter resulting from the commission of a misdemeanor in violation of R.C. 2903.04(B) and guilty of assault in violation of R.C. 2903.13 and sentencing him to consecutive sentences of four years and six months.
On April 27, 1997, appellant began a night of drinking with his wife, Erin Vich (wife), and three friends, Amanda Masloski (Masloski), Steve Barnhart (Barnhart), and Ryan Rogers (Rogers). (Tr. 187). The group first travelled to the Diamond Inn in Parlett, Ohio. (Tr. 188). After spending about an hour there, the group left and proceeded to another establishment, P M's, in Adena, Ohio. (Tr.189). While at P M's, Ed Roski (decedent) entered and made comments to appellant while giving him a spiteful look. (Tr. 399). This made appellant feel uncomfortable and he suggested that the group leave so there would be no confrontation. (Tr. 399). Everyone in the group agreed to leave, except for Rogers who decided to stay. (Tr. 400)
The remaining four members of the group left to go to appellant's home in Cadiz, Ohio. (Tr. 400-401). While commuting to appellant's residence, the group remembered that they had consumed all of the alcohol there earlier in the evening, so they decided to stop and purchase more. (Tr. 401). The group turned the vehicle around and went to Terry's Bar in Adena, Ohio. (Tr. 401). When they arrived, appellant entered the establishment to purchase the alcohol. (Tr. 402-403). While appellant was inside Terry's Bar, his wife, who was intoxicated, exited the vehicle and proceeded to urinate in the parking lot, in front of the vehicle. (Tr. 302). Fred Terry Marshall (Marshall), who was also intoxicated, witnessed her relieving herself and yelled a derogatory comment. (Tr. 125). Marshall lived in an apartment over the establishment, which his father owned. (Tr. 122).
Appellant, who was not intoxicated, exited the establishment with alcohol in hand, and proceeded to enter the vehicle. (Tr. 195). Before the vehicle left, appellant's wife told him someone had yelled an obscenity at her. (Tr. 195). Appellant then withdrew from the vehicle and hollered at Marshall, who was still outside the establishment. Marshall yelled back and appellant charged and struck Marshall in the head, knocking his glasses off and sending him to the ground. (Tr. 125). Appellant began to pummel Marshall, and before he allegedly lost consciousness, Marshall called for his friend, the decedent, to help him. (Tr. 126). The decedent, who was intoxicated, came through the parking lot and attempted to break up the scuffle. Appellant struck him in the head, knocking him to the ground. (Tr. 240). Appellant then began kicking the decedent in the head numerous times, rendering him unconscious and causing blood to run down his throat. (Tr. 242-243)
Appellant then left with the group and they returned to his residence. (Tr. 418). When the group arrived, they received phone calls from many individuals including Ericka Cibor (Cibor), all of which indicated something was wrong. (Tr. 479). The decedent had choked to death on his own blood. (Tr. 263). The sheriff apprehended appellant shortly thereafter.
Appellant was charged with one count of murder, a violation of R.C. 2903.02, one count of felonious assault, a violation of R.C.2903.11, and one count of assault, in violation of R.C. 2903.13.
During the discovery process, the trial court granted appellant's motion to suppress and held that plaintiff-appellee, State of Ohio, could not use evidence of other crimes committed by appellant previously. The trial court also ruled that issues relating to the admission of relevant evidence concerning appellant's prior acts, for the purposes of establishing a character trait, could not be decided before trial and would depend upon what, if any, other evidence was presented at trial.
During the proceedings, the trial court ordered the witnesses be separated. (Tr. 65). After appellee presented its case, appellant moved for a Crim.R. 29 motion of acquittal for the first count of murder and the second count of felonious assault. (Tr. 284). The trial court heard the motion in a side bar and overruled the Crim.R. 29 motion for the murder charge, but after some deliberation, granted the motion for the felonious assault charge. (Tr. 290). The basis for the ruling appeared to hinge upon whether the felonious assault charge could co-exist with the murder charge. (Tr. 292). Appellant then presented his case, and appellee presented a rebuttal witness, Cibor. At the close of the rebuttal witness, after the jury had been dismissed, the trial court heard argument from appellee to reinstate the Crim.R. 29 motion for felonious assault. (Tr. 496). Appellant, appellee, and the trial judge met the next day in the judge's chambers and again discussed the possible reinstatement of the felonious assault charge. (Tr. 496). After hearing arguments from both appellant and appellee, the trial judge decided to reinstate the felonious assault charge. (Tr. 505).
The jury heard the closing argument of both appellee and appellant and proceeded to deliberation. The jury returned a verdict finding appellant guilty of involuntary manslaughter as a result of the commission of a misdemeanor assault and guilty of assault. Appellant was sentenced to a definite four year term of incarceration and a definite six month term of incarceration, which were to be served consecutively. Appellant subsequently appealed.
 Appellant sets forth three assignments of error on appeal.
Appellant's first assignment of error alleges:
 "The trial court erred when it permitted prosecutorial misconduct in closing argument. Tr. 512, 515, 535, 537, 544, 546, 547."
Appellant asserts that there were many instances of prosecutorial misconduct during the trial. First, appellant argues that misconduct occurred when the prosecutor attempted to cross-examine John Woods (Woods), who was a friend of the decedent, concerning other fights in which appellant had been involved. The trial judge limited this testimony to a prior dispute between appellant and the decedent. (Tr. 150). The appellant also argues that misconduct occurred when the prosecutor moved to cross-examine him about prior assaultive behavior, and why appellant no longer owned his home. The trial judge prevented both of these lines of questioning. (Tr. 425-426). Finally, appellant argues misconduct occurred when the prosecutor attempted to question Barnhart about other fights in which appellant was involved. (Tr. 386). The trial court sustained the objection raised by defense counsel to this question.
Appellant also urges that there were many instances of misconduct during appellee's closing argument. First, appellant argues that the prosecutor appealed to the sympathy of the jury when he stated:
 "I realize that it's difficult to convict. somebody of murder. I mean you're going to be affecting this man's whole life. I realize that. But when you are thinking about that, I want you to also think about how Ed Roski's life has been affected. Ed Roski was 30 years old and --." (Tr. 515).
 "* * * And whether or not it's your cup of tea or you want to take that job, think what would happen, what would be your attitude if you are sitting in this audience and it's your son or your daughter that's been killed.
"* * *
 "Ladies and gentlemen, at this time Mr. Roski and his family are asking you and they are calling out to you to make the proper verdict." (Tr. 546-547).
Next, appellant contends that the prosecutor engaged in misconduct when he relied upon facts not in evidence, stating:
 "* * * and you can smoke a marijuana cigarette and it can remain in your system for up to thirty days." (Tr. 535).
 "* * * This defendant is looking for that chance to purposely do what he told people before many times before that he would do." (Tr. 544)
Appellant argues that there was no evidence presented explaining how long marijuana stays in a person's system and there was no evidence presented whereby appellant stated it was his intention to cause harm to the decedent. Appellant citesState v. Stephens (1970), 24 Ohio St.2d 76, and State v. Smith
(1984), 14 Ohio St.3d 13, in support of his position.
Third, appellant argues that the prosecutor committed misconduct when he gave his opinion in stating:
 "* * * I believe that the testimony shows without a doubt this defendant assaulted Terry Marshall, without a doubt * * *" (Tr. 544).
Appellant cites Smith, in which the Ohio Supreme Court stated:
 "It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Thayer (1931), 124 Ohio St. 1; DR 7-106(C) (4) of the code of Professional Responsibility. * * *." Smith, supra at 14.
Finally, appellant argues that appellee engaged in misconduct when he misstated the law regarding self-defense, in stating:
 "Well, it's self-defense. Self-defense is an admission of the offense itself. We did it. I killed Ed Roski. I murdered him." (Tr. 537)
In State v. Keenan (1993), 66 Ohio St.3d 402, 405, the Ohio Supreme Court commented on the standard of prosecutorial conduct which would result in a reversal, stating:
 "`The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial.' State v. Apanovitch (1987), 33 Ohio St.3d 19, * * *. Thus, although we have "express[ed] our mounting alarm over the increasing incidence of misconduct * * * in capital cases," we have not treated prosecutorial misconduct as reversible error "except in rare instances." State v. DePew
(1988), 38 Ohio St.3d 275, 288 * * *."
Appellant first states that there were instances of misconduct in questioning of witnesses. First, appellant claims that misconduct occurred when appellee questioned Woods about prior incidents. The trial court allowed this questioning, but limited the incidents to those occurring between appellant and the decedent. Trial courts have broad discretion in admitting and excluding evidence, and a reviewing court will not reverse absent an abuse of discretion. State v. Dunlap (1995), 73 Ohio St.3d 308.
In the case at bar, appellee had to prove intent to obtain a murder conviction. Evid.R. 404 (B) allows questioning about prior wrongs where intent must be proven, stating:
 "Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith. It may however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added).
Therefore, any prior threats made by appellant to appellee would be permissible to prove intent. The trial court limited these prior instances to those which occurred between appellant and the decedent, preventing any information of other assaultive behavior from reaching the jury. (Tr. 151). Since appellee had to prove intent to obtain a murder conviction, the trial court did not err in permitting appellee to question Woods about previous threats made between appellant and the decedent and the prosecutor did not commit misconduct.
Appellant also argues that misconduct occurred when Woods commented about other fights which involved appellant, but not the decedent. (Tr. 154). However, this response came on cross-examination after appellant's counsel triggered the response. (Tr. 154). Appellant's counsel quickly objected and the trial court sustained the objection. The Ohio Supreme Court discussed the "invited error" doctrine inState ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357, 359, when it stated:
 "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make."
Appellant cannot claim error in Woods' response to a question which his counsel invited and the prosecutor did not commit misconduct regarding this testimony of Woods.
Appellant next argues that the prosecutor committed misconduct in attempting to question Barnhart about other fights in which appellant was involved. (Tr. 386). Also, appellant claims misconduct occurred when the prosecutor moved to question appellant about other assaultive behavior, and why he no longer owned his home. (Tr. 425-426, 433). In all of these alleged instances of misconduct concerning the questioning of Barnhart and appellant, the trial court sustained the objections raised by appellant's counsel, preventing the line of questioning from occurring. The trial court later instructed the jury not to speculate as to why it sustained an objection to a question, nor to speculate what the answer might have been. (Tr. 550) Therefore, appellant was not prejudiced by the line of questioning presented by the prosecutor.
Appellant next asserts many instances of misconduct which occurred during appellee's closing argument. The Ohio Supreme Court stated the standard of reviewing misconduct in closing argument in State v. Moritz (1980), 63 Ohio St.2d 150, 157, stating:
 "* * * The closing argument must, however, be reviewed in its entirety to determine if the prosecutor's remarks were prejudicial. See State v. Burgun (1978), 56 Ohio St.2d 354, 366; see, also, State v. Porter (1968), 14 Ohio St.2d 10, paragraph two of the syllabus."
Furthermore, in State v. Phillips (1995), 74 Ohio St.3d 72, the Ohio Supreme Court stated:
 "* * * We note that wide latitude is given to counsel during closing argument to present their most convincing positions. State v. Stephens (1970), 24 Ohio St.2d 76, 53 O.O.2d 182, 263 N.E.2d 773; Shelton v. State (1921), 102 Ohio St. 376, 131 N.E. 704. Where prosecutorial misconduct is alleged, the court must determine whether the remarks in closing argument were improper and, if so, whether the remarks prejudicially affected substantive rights of the defendant. State v. Smith
(1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885; United States v. Dorr
(C.A.5, 1981), 636 F.2d 117. "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial.
Appellant claims that prosecutorial misconduct occurred when appellee attempted to appeal to the sympathy of the jury on three instances during closing argument. (Tr. 515, 547, 583, 585). However, each of the statements complained about were objected to and sustained with an instruction given for the jury to disregard the statements. Furthermore, the trial judge later instructed the jury to disregard sympathy in its deliberations. (Tr. 583-585). A jury is presumed to have followed the instructions given to it, including any curative instructions. State v. Garner (1995),74 Ohio St.3d 49. Viewing these statements in the context of the entire closing argument, and considering the fact that they were objected to and sustained with an instruction given to disregard the statements and later to disregard sympathy in deliberation, appellant was not deprived of a fair trial.
Next, appellant argues that the prosecutor committed misconduct in commenting upon evidence which was not in trial. First, appellant claims appellee made a comment about the length of time marijuana stays in a person's system. (Tr. 535). This was not in the evidence, but the trial judge sustained the objection of appellant's counsel and told the jury to disregard the statement. The jury is presumed to have followed this instruction. Garner,supra. Also, appellant asserts prosecutorial misconduct occurred when appellee stated that appellant did what he told many people he would do. (Tr. 544). Appellant claims that this comment was not supported by any of the evidence, but this is not true. Appellee presented the testimony of Woods whereby he stated that appellant had previously threatened the decedent, stating:
"Q. Tell me about the threats.
 "A. Come outside, you know, they'd escort him out first, he'd be yelling going out the door, "Come on outside. I'll kick your ass outside. "" (Tr. 151)
The prosecutor's statement that appellant did what he told people he would do was based upon this testimony and was permissible. Since the prosecutor's statement was based upon Woods' testimony, appellant was not prejudiced.
Appellant next argues prosecutorial misconduct occurred when appellee commented that the evidence demonstrated appellant assaulted Marshall. (Tr. 544). Appellant failed to object to this comment and thus waived this error, unless plain error is shown.State v. Comen (1990), 50 Ohio St.3d 206. Crim.R. 52(B) states:
 "(B) Plain Error. Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
Furthermore, in State v. Long (1978), 53 Ohio St.2d 91, 95, the Ohio Supreme Court stated:
 "* * * As the United States Court of Appeals for the Sixth Circuit has noted, "The plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice.'"
The Ohio Supreme Court in Keenan, supra, discussed prosecutors giving opinions during closing arguments, stating:
 "* * * A prosecutor may not express his personal opinion about the guilt of the accused, unless he bases that opinion on the evidence presented in court."
The prosecutor's statement that the evidence proved appellant assaulted Marshall was not unfounded, but rather, was supported by the testimony presented at trial. Given the many witnesses presented and viewing the closing argument in its entirety, a miscarriage of justice did not occur and appellant was not deprived a fair trial based upon this opinion.
In his last assertion of prosecutorial misconduct, appellant asserts that reversible error occurred when the prosecutor misstated the law relevant to self-defense. In State v. Martin
(1986), 21 Ohio St.3d 91, 94, the Ohio Supreme Court discussed self-defense and stated:
 "* * * Self-defense represents more than a `denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged * * *' Id. Rather, we stated in Poole, this defense admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the defendant claims exempt him from liability. Id. * * * Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged."
In the case at bar, the prosecution stated in closing argument that appellant admitted to murdering the decedent by claiming self-defense. Under Martin, supra, appellant would be admitting to the facts in question and justifying his actions under the circumstances. Furthermore, the trial court prevented the prosecutor from using self-defense against appellant in this manner. Viewing the closing argument in its entirety and given the witnesses presented, appellant was not denied a fair trial based upon this statement.
Given upon the fact that the trial judge did not abuse its discretion in admitting the testimony of Woods concerning other instances of hostility between appellant and the decedent, and the fact that appellant's cross-examination led to statements of other fights, and the trial court sustaining the objection of appellant's counsel when the prosecutor attempted to question about other wrongs not related to the decedent, prosecutorial misconduct did not occur in questioning witnesses. Also, viewing the closing argument in its entirety and based upon the fact that the trial court told the jury to disregard statements designed to appeal to the jury's sympathy and again instructed the jury to disregard sympathy in deliberating, and the fact that the trial court sustained an objection and gave a curative instruction to the only statement made by the prosecutor which was not based upon evidence, and the fact that the prosecutor's opinion was supported by the evidence, and the fact that the prosecutor's statement concerning self-defense was consistent with the law, appellant was not denied a fair trial and prosecutorial misconduct did not occur in closing argument. Therefore, appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The trial court erred when it permitted the dismissed charges to be reinstituted. Tr., 505.
Appellant argues that the trial court committed reversible error when it reinstated the felonious assault charge after it had been dismissed under Crim.R. 29. Appellant asserts that this violated his due process rights as he did not have notice of the dismissed charge and could not defend himself against it. In support of this argument, appellant cites In re Ruffalo (1967),390 U.S. 544; Cole v. Arkansas (1947), 333 U.S. 196; and In reOliver (1948), 333 U.S. 257.
Appellant recognizes State v. Briscoe (1992), 84 Ohio App.3d 569, wherein the court held that a trial court's statement that it was inclined to grant a Crim.R. 29 motion was not a final order. However, appellant states that in so holding, the court stated:
 "A review of the record reveals that the state did not present any additional evidence. * * * The trial court's initial announcement of its inclination to grant Briscoe's motion for acquittal did not constitute a final judgment, since the trial court did not sign an order to that end. State v. Benson (1985), 29 Ohio App.3d 321, 29 OBR 448, 505 N.E.2d 987, paragraph one of the syllabus. The trial court proceeded to overrule the motion for acquittal and allowed Briscoe to present evidence in defense of the amended charge * * * Since the trial court's announcement of its inclination to grant the motion for acquittal was not a signed, final order and because no additional evidence was presented by the state, the trial court did not commit any error." Briscoe, supra, at 572.
First, appellant states that at the close of appellee's case, the trial judge initially stated that it would reserve ruling on the Crim.R. 29 motion, dismissing the felonious assault charge. Appellant argues that this is different from Briscoe, supra,
because here the trial judge did not merely state an inclination to grant the motion, but instead actually granted it. Furthermore, appellant argues that the prosecutor presented a rebuttal witness, which came after the granting of the Crim.R. 29 motion, thereby failing the second prong of Briscoe, supra.
Reinstating a charge previously dismissed under Crim.R. 29 can present a difficult problem because a defendant may proceed with their case and fail to properly defend against the charge. Here in reinstating the felonious assault charge, the trial court stated that it did not sign an order, so there was no final judgment. However, this is still different from Briscoe, supra,
because here the trial court actually did rule on the motion and there the court merely stated an inclination to grant the motion. Appellant then presented his case, believing that the felonious assault charge had been dismissed. Furthermore, the prosecutor presented a rebuttal witness after the granting of the Crim.R. 29 motion, which is also contra to Briscoe, supra. Therefore, the case at bar is readily distinguished from Briscoe, supra.
The trial court's reinstatement of the felonious assault charge would have resulted in reversible error had the error not been harmless. In State v. Young (1983), 5 Ohio St.3d 221, 226, the Ohio Supreme Court discussed harmless error, stating:
 "When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the minds of the average jury. Harrington v. California (1969), 395 U.S. 250, 254."
Here, appellant faced a murder charge. Included with the murder charge was the lesser included offense of manslaughter. Appellant was aware that the jury would be instructed on two forms of manslaughter, one while committing the misdemeanor of assault, and another charge of manslaughter while committing the felony of felonious assault. Therefore, appellant was not completely free of defending against felonious assault.
Next, it must be determined what impact the reinstatement of the felonious assault charge would have had on the minds of the average jury. Young, supra. Since appellant was not convicted of felonious assault and only of involuntary manslaughter while committing the misdemeanor of assault and assault, It must be determined whether the reinstatement of the felonious assault charge caused the jury to inflate these other charges. The original Crim.R. 29 motion was held in a side bar, out of the hearing of the jury. (Tr. 282, 290) Therefore, the jury did not know that the trial judge had granted the motion dismissing the felonious assault charge. Furthermore, when the trial judge reinstated the felonious assault charge, the first arguments were heard when the jury was not present and continued in the trial judge's chambers. (Tr. 496). Since the jury did not hear the original Crim.R. 29 motion dismissing the felonious assault charge nor the subsequent reinstatement of the charge, it did not use the reinstatement of the charge to inflate the other charges. Therefore, this error is harmless.
Based upon the fact that the original Crim.R. 29 motion was out of the hearing of the jury and the reinstatement of the charge was also out of the presence of the jury, and the fact that appellant had to defend against a manslaughter charge which occurred while committing felonious assault, appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "The trial court erred when it permitted Ericka Cibor to testify as a rebuttal witness. Tr., 477."
Appellant argues that the trial judge entered an order requiring separation of witnesses under Evid.R. 615. (Tr. 65). Although the order was in effect throughout the proceedings, appellant states that appellee's rebuttal witness, Cibor, remained in the courtroom and heard all of the testimony she was going to rebut. Appellant cites State v. Waddy (1992), 63 Ohio St.3d 424, where the Ohio Supreme Court recognized that the purpose of such an order is to prevent a witness from hearing other witnesses, which would allow them to "tailor their own testimony accordingly." Appellant maintains that in violating the separation order, Cibor was able to tailor her own testimony accordingly and, therefore, should not have been able to testify.
After being allowed to testify, Cibor recalled what was said when she telephoned appellant's house. Appellant contends that Cibors testimony did not rebut any of the previous testimony and that her testimony was hearsay. Therefore, it is argued, even if Cibor was permitted to testify, her testimony should have been inadmissible.
In State v. Cox (1975), 42 Ohio St.2d 200, 202, the Ohio Supreme Court discussed the consequences of a witness who violated a separation order and held:
 "`* * * If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court. * * *'"
Furthermore, in State v. Morris (1982), 8 Ohio App.3d 12, the court allowed a witness who had violated a separation order to testify. In so doing, the court stated:
 "`There is no indication at all in the record that Government counsel intentionally permitted disregard of the rule. * * *'"
Here, appellee did not know that Cibor was in the courtroom throughout the proceedings. Once discovered, appellee immediately had her removed from the courtroom. (Tr. 472). Also, the trial court exercised its sound discretion in allowing this testimony and did not abuse such discretion since appellee did not permit Cibor to violate the rule and removed her upon discovery. Therefore, the trial court did not commit error in permitting Cibor to testify.
Appellant next contends that Cibor did not rebut any of the previous testimony and her testimony was inadmissible hearsay. Appellee had to prove intent in order to obtain a murder conviction. Therefore, appellee had to show appellant was not surprised about the injuries to the decedent. Cibor's testimony did rebut previous testimony of appellant and Barnhart who testified they did not know the injuries to the decedent were serious until receiving phone calls later that evening. (Tr. 385, 419). Furthermore, while the testimony of the actual statements made could qualify as hearsay, they were not offered to prove the truth of the matter asserted, but instead to show the reaction of the witnesses to prove they were not surprised by the phone calls. Therefore, the statements were not hearsay. The trial court did not commit error in admitting the statements.
Based upon the fact that the trial court did not abuse its discretion in permitting a witness who violated a separation order to testify, and the fact that the testimony rebutted the reaction of previous witnesses and was offered to demonstrate the mood of the witnesses, appellant's third assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.
 APPROVED: ______________________________ EDWARD A. COX, PRESIDING JUDGE