The STATE of Ohio, Appellee,

v.

ANDERSON, Appellant.

[Cite as *State v. Anderson*, 183 Ohio App.3d 522, 2009-Ohio-3900.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91209.

Decided Aug. 6, 2009.

524

William D. Mason, Cuyahoga County Prosecuting Attorney, and Steven E. Gall, Assistant Prosecuting Attorney, for appellee.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellant.

---

JAMES J. SWEENEY, Judge.

{¶ 1} Defendant-appellant, Jamal Anderson, appeals his convictions of multiple offenses stemming from a high-speed car chase and subsequent car crash involving the police. After reviewing the facts of the case and pertinent law, we affirm in part, reverse in part, and remand for further proceedings.

## The Chase

{¶ 2} On July 10, 2006, Cleveland police officer Michael Legg and his partner, Officer Taylor, recognized a silver Mercury Sable parked near Euclid and Burgess Avenues in Cleveland, which defendant, who was wanted on several outstanding warrants, had been seen driving. The officers radioed for assistance. Several police vehicles were positioned nearby, waiting for defendant to get in the car. The plan was to box defendant in at a nearby traffic light and arrest him. However, when defendant saw the first police vehicle attempt to cut him off, he managed to get through the intersection and head west on Euclid Avenue. The police cars in the area turned their lights and sirens on and began to pursue him.

{¶ 3} The chase quickly approached speeds of 80 to 90 miles per hour, with defendant leading the police through the city of East Cleveland, onto I–90 westbound.

{¶ 4} Cleveland police officer John Kubas heard about the chase over the police radio. He and his partner, Officer Spahia, entered I–90 westbound at the E. 55th Street entrance ramp in a black and white marked police car. Officer Kubas saw defendant's vehicle approaching from behind, being pursued by several marked police cars with lights and sirens activated. Defendant's car swerved toward Officers Kubas and Spahia's vehicle, causing them to drive off to the side of the road. According to Officer Kubas, defendant's car was traveling in excess of 60 to 70 miles per hour.

{¶ 5} Officer Kubas testified that if he and his partner had not gotten out of the way when defendant's vehicle swerved toward them on I–90, "our zone car would have been struck by the auto. * * * I was afraid that we were going to get hit. And being a policeman for 13 years, I've seen many accidents, and I was scared we were going to get hit and possibly injured."

{¶ 6} Defendant exited I–90 at St. Clair Avenue and reentered the highway approximately one eighth of a mile away, at Superior Avenue, this time heading east. For a time, Cleveland police officer Vincent Lucarelli was driving his police vehicle adjacent to defendant's car. Defendant swerved toward Officer Lucarelli's vehicle, and Officer Lucarelli had to take evasive action to avoid an accident. According to Officer Lucarelli, they were traveling "well over 90 miles an hour" at this point.

{¶ 7} Defendant next approached the Eddy Road exit of I–90. Two marked Bratenal police cars, with their overhead lights on, were positioned at the end of the Eddy Road exit ramp in another attempt to block defendant's car. When defendant did not slow his vehicle down as he exited I–90, Bratenal police officer Daniel Gomillion and Sergeant Barton moved their cars out of the way to avoid being hit.

{¶ 8} Officer Legg testified that his vehicle was parallel to defendant's vehicle for a few blocks and he got a good look at the driver, who he identified in court as defendant. Officer Legg also testified that there was no way defendant did not see and hear the police lights and sirens surrounding him. "It seemed like the closer we got to Eddy Road, the more the Sable began to accelerate. So at that point we thought the collision was inevitable is what we were anticipating," Officer Legg stated.

{¶ 9} Officer Gomillion testified that defendant was driving 80 to 90 miles an hour when he drove across the Eddy Road ramp: "I see the vehicle speeding at a high rate of speed, and I see he's not even slowing down. I instruct my sergeant, we got to get out of the way. I throw my car in reverse and peel out backwards. He throws his car in drive and peels out forward." Officer Gomillion further testified that defendant's vehicle went airborne as it crossed over Eddy Road and that it missed hitting his and Sgt. Barton's police vehicles by just a few feet. Asked what he thought would have happened had he not moved his vehicle out of the way, Officer Gomillion stated, "I'm not sure I would be a police officer right now, let alone be alive."

{¶ 10} Finally, defendant exited I–90 at East 140th Street, ending up on a side street off Euclid Avenue, where he jumped out of the car and took off running. At this point, only the police vehicle driven by Officer Legg had kept up with defendant. By the time the other police vehicles arrived at the scene, defendant was out of sight in a nearby wooded area. Defendant was not arrested that night.

### The Collision

{¶ 11} On July 12, 2006,[1] Sergeant Eugene Sharpe, of the Cuyahoga County Sheriff's Office, received a tip from a confidential informant that defendant was seen driving a maroon Chevy Lumina at the American Motel on Euclid Avenue, in Cleveland. Sgt. Sharpe was working undercover in the fugitive task force, which is a joint agency with the FBI, the Cuyahoga County Sheriff's Office, the Cleveland Police Department, and the Cleveland Metropolitan Housing Authority. Sgt. Sharpe and his fellow fugitive task force officers went to the motel and set up surveillance of the suspect vehicle in the parking lot.

{¶ 12} Sgt. Sharpe and FBI Special Agent Phillip Torsney saw defendant exit one of the motel rooms and get behind the wheel of the Lumina. A female followed defendant and also got in the vehicle. As defendant backed out of his parking space, Sgt. Sharpe and another officer walked toward the front of the

---

1. Portions of the record refer to both July 11, 2006, and July 12, 2006, as the date of the collision. However, neither party raises the discrepancy on appeal.

car, identifying themselves as police officers, and motioned and yelled for defendant to stop the vehicle. Instead, defendant put the vehicle in drive and headed straight toward the officers. Sgt. Sharpe drew his weapon and yelled, "Police. Stop. Stop. Stop the vehicle. Stop the vehicle now." Defendant initially put his hands up in the air, then suddenly accelerated toward Sharpe, who jumped out of the way. Sgt. Sharpe testified about what happened next:

{¶ 13} "The vehicle goes right past me. I turn around. Now I'm behind the vehicle and I see him getting ready to hit Agent Torsney who is out of his vehicle. He's going right at him. At that point, I'm thinking he's going to kill him or seriously hurt him. At that point, I immediately fire one or two rounds from my service weapon trying to stop the vehicle.

{¶ 14} "Also at the same time, Special Agent Torsney is also firing as he's trying to escape the path of the vehicle from the front or the side area. The vehicle then tries to get through. At this time, he's trying to get through the small area where Torsney parked his vehicle and the fence. It's not very large. He guns past there and runs right into [Cuyahoga County Sheriff's Office] Detective Domonkos's Tahoe which is now pulled up. He hits Detective Domonkos' Tahoe at the same time that Detective Domonkos is getting out of his vehicle causing Domonkos to immediately fall to the ground and he hit his head on the ground."

{¶ 15} Special Agent Torsney testified that the task force wanted to apprehend defendant before he had a chance to leave in his car, given the dangerous chase that defendant had led the Cleveland police on two days before. Torsney further testified that when defendant's car began to move, Torsney drew his weapon and said, "Police, FBI, stop, show us your hands." He also testified that he heard other officers telling defendant similar things. At first, defendant put his hands in the air, but his car kept moving forward at a slow pace. Torsney testified about what happened next:

{¶ 16} "He accelerates the vehicle, and it almost hits Detective Sharpe who is further up and to the right. He gets out of the way.

{¶ 17} " * * *

{¶ 18} "At this point, this vehicle is coming right at me.

{¶ 19} "Well, I know I have a female passenger in that car, and this car is right up on me and it's coming at me. And I get off to the side of it and brace with my left hand. It hits me on the right side around my knee, the side of the car, brushing past me. In my mind, I feared for the life of Officer Sharpe, my own life at that point, and I know there's other officers behind me. And I fired two rounds trying to stop that vehicle."

{¶ 20} According to Special Agent Torsney, the vehicle kept going and ran into Det. Domonkos's vehicle.

{¶ 21} Det. Domonkos testified as follows regarding when he pulled into the motel parking lot: "I stop my vehicle and start coming out. As I'm coming out, I hear stop, police. Let me see your hands, several times. I then hear an engine rev. I hear a couple of gunshots, and then I'm picking myself up off the ground because the vehicle that the defendant was driving struck mine."

{¶ 22} After the collision, the authorities pulled defendant from the vehicle, got him on the ground, and handcuffed him. Sgt. Sharpe and Special Agent Torsney saw a plastic bag containing crack cocaine on the floor of the car near the driver's seat and the butt of a loaded handgun sticking out from underneath the driver's seat.

{¶ 23} On August 22, 2006, defendant was indicted for the following offenses in Cuyahoga County Common Pleas case No. CR–485157, which is associated with the chase on July 10, 2006: failure to comply with order or signal of a police officer in violation of R.C. 2921.331, five counts of felonious assault of a peace officer in violation of R.C. 2903.11 (officers Kubas, Spahia, Lucarelli, Barton, and Gomillion), and one count of possessing criminal tools in violation of R.C. 2923.24.

{¶ 24} Defendant was also indicted that same day for the following offenses in Cuyahoga County Common Pleas case No. CR–485158, which is associated with the collision on July 12, 2006: failure to comply with order or signal of a police officer in violation of R.C 2921.331, three counts of felonious assault of a peace officer in violation of R.C. 2903.11 (Officers Sharpe, Torsney, and Domonkos), two counts of assault of a peace officer in violation of R.C. 2903.13 (Officers Torsney and Domonkos), two counts of having a weapon while under disability in violation of R.C. 2923.13, carrying a concealed weapon in violation of R.C. 2923.12, vandalism in violation of R.C. 2909.05, possessing criminal tools in violation of R.C. 2923.24, drug possession in violation of R.C. 2925.11, and drug trafficking in violation of R.C. 2925.03. The indictment in case No. CR–485158 included a one-year firearm specification.

{¶ 25} The two cases were consolidated, and after a jury trial, defendant was found guilty of all counts except drug trafficking. On March 6, 2008, the court sentenced defendant to an aggregate of 22 years in prison. Defendant now appeals, raising 12 assignments of error for our review.

### Adequacy of indictments and jury instructions

{¶ 26} Assignments of error I, II, and V will be addressed together, and they read as follows:

{¶ 27} "I. Mr. Anderson cannot be convicted of the peace officer specifications attendant to each of the felonious assault convictions and assault convictions because there is no evidence that the grand jury or the petit jury ever considered whether Mr. Anderson was aware that the alleged victims were peace officers or was reckless in that regard.

{¶ 28} "II. Mr. Anderson cannot be convicted of the one-year firearm specifications attendant to each of the convictions in counts one through six, ten and twelve because there is no evidence that the grand jury or the petit jury ever considered whether Mr. Anderson was aware that he possessed the firearm when committing these offenses or was reckless in that regard.

{¶ 29} "V. Mr. Anderson cannot be convicted of the offense of having a weapon under disability in count seven because there is no evidence that the grand jury or the trial court ever considered whether Mr. Anderson was aware that he knew he was a fugitive from justice or was reckless in that regard."

{¶ 30} Defendant argues that the essential element of mens rea was missing from the indictments and the jury instructions regarding various charges that he faced. Defendant further argues that when no culpable mental state is provided under the law, the default mental state of recklessness applies. See, generally, *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169.

### *Peace officer; adequacy of indictments and jury instructions (case Nos. CR–485157 and CR–485158)*

{¶ 31} Defendant was convicted of multiple counts of felonious assault and assault of a peace officer in violation of R.C. 2903.11 and 2903.13. However, his argument that an essential element of these offenses is his awareness that the assault victims were police officers has been rejected by this court. In *State v. Wilcox*, 160 Ohio App.3d 468, 2005-Ohio-1745, 827 N.E.2d 832, at ¶ 3, 7, we held the following:

{¶ 32} " 'A finding by the jury that the victim was a peace officer simply enhances the degree of the offense and potential penalty.' Thus, proof of knowledge of the victims status is not required under these circumstances. *State v. Gimenez* (Sept. 4, 1997), Cuyahoga App. No. 71190, 1997 WL 547950. * * * Based on this precedent, it is irrelevant whether [the defendant] knew that those stopping his van were peace officers.

{¶ 33} " * * *

{¶ 34} "As our prior decisions bear out, there is no indication whatsoever that the General Assembly intended to impose anything other than strict liability for the peace officer penalty enhancement contained in R.C. 2903.13(C)(3)."

{¶ 35} In following *Wilcox,* we hold that the indictments and jury instructions in the instant case were adequate regarding the various charges of assaulting a peace officer.

### Firearm; adequacy of indictments and jury instructions (case No. CR–485158)

{¶ 36} Defendant was convicted of a one-year firearm specification attendant to various counts pursuant to R.C. 2941.141 for the gun that was found underneath the driver's seat of the Lumina he was operating when he was arrested. Defendant argues that an essential element of this firearm specification is that he knew, or was reckless concerning the knowledge, that he "had a firearm on or about [his] person or under [his] control while committing the offense." R.C. 2941.141. Neither defendant nor the state set forth any law concerning this specific issue.

{¶ 37} We decline to extend the *Colon* school of thought to firearm specifications in violation of R.C. 2941.141. Rather, we adopt the reasoning found in *Wilcox* that a firearm specification is an enhancement to an underlying offense; therefore, strict liability applies. Accord, *State v. Blankenship* (1995), 102 Ohio App.3d 534, 547, 657 N.E.2d 559 (holding that a "firearm specification is not a separate offense" and does not violate double jeopardy).

### Fugitive from justice; adequacy of indictments and jury instructions (case No. 485158)

{¶ 38} Defendant was convicted of having a weapon while under a disability, with the disabling condition being that he was "a fugitive from justice," in violation of R.C. 2923.13. While the indictment in the instant case alleges that defendant "did knowingly" possess a gun, defendant argues on appeal that the indictment should also have alleged that he knew, or was reckless regarding the knowledge, that he was a fugitive from justice.

{¶ 39} Defendant failed to object to being indicted for violating R.C. 2923.13(A)(1) on the basis that the indictment was defective because it did not include the essential element of the offense's mens rea. Therefore, a plain-error analysis is appropriate. See *Colon,* 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, at ¶ 7; Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court").

{¶ 40} In *State v. Clay,* 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, at ¶ 28, the Ohio Supreme Court held that "for purposes of proving the offense of having a weapon while under a disability pursuant to R.C. 2923.13(A)(3), the mental state of recklessness applies in determining whether the defendant was

aware that he or she was 'under indictment.' " See also R.C. 2901.21(B). We extend this reasoning to determining whether a defendant was aware that he or she was "a fugitive from justice" pursuant to R.C. 2923.13(A)(1).

{¶ 41} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 42} In the instant case, nine law-enforcement officers testified that multiple marked police cars with lights and sirens activated were in pursuit of defendant, who narrowly missed hitting several of these cars, during the July 10, 2006 high-speed chase. In other words, there was overwhelming evidence that on July 12, 2006—two days after this unsuccessful chase—defendant knew that he was a fugitive from justice. Therefore, any defects in the indictments or jury instructions were harmless and do not amount to plain error.[2]

{¶ 43} Accordingly, assignments of error I, II, and V are overruled.

### Sufficiency and manifest weight of the evidence

{¶ 44} Assignments of error III, IV, VI, and VII will be addressed together, and read as follows:

{¶ 45} "III. The evidence is insufficient to find the defendant guilty of the offenses alleged in counts two through six, felonious assault of a peace officer, and thus the convictions in these counts as well as in count seven must be vacated.

{¶ 46} "IV. The convictions for the offenses alleged in counts two through six, felonious assault of a peace officer, are against the manifest weight of the evidence.

{¶ 47} "VI. There is insufficient evidence to sustain the conviction in count eight for possessing a weapon while under disability.

{¶ 48} "VII. The conviction for vandalism is not supported by sufficient evidence."

{¶ 49} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the

---

2. The instant case can be factually distinguished from this court's recent opinion in *State v. Johnson*, Cuyahoga App. No. 91701, 2009-Ohio-3101, 2009 WL 1819445. In *Johnson*, this court reversed a conviction for having a weapon while under disability because "the offense was treated as a strict liability offense," and the record was silent as to the defendant's mens rea. Id. at ¶ 32. In the instant case, however, the record is replete with evidence of defendant's mens rea, i.e., that he had actual knowledge of his disabling condition.

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 50} The proper test for an appellate court reviewing a claim of manifest weight of the evidence is as follows:

{¶ 51} "[T]he appellate court sits as a 'thirteenth juror' and * * * reviewing the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citations omitted.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

### *Felonious assault of a peace officer; sufficiency and manifest weight of the evidence (case No. CR–485157)*

■ {¶ 52} Defendant argues that the evidence does not sustain his felonious assault of a peace officer convictions because it does not show that he harmed or attempted to harm any of the officers during the July 10, 2006 chase. Rather, defendant allegedly "set out on a path which he successfully completed—to get free of the police."

{¶ 53} Defendant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which states, "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Furthermore, R.C. 2923.02(A) defines "attempt" as follows: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." In *State v. Briscoe* (1992), 84 Ohio App.3d 569, 574, 617 N.E.2d 747, we held that a criminal attempt "is an act that is a substantial step in a course of conduct planned to culminate in the commission of a crime. A substantial step is one that strongly corroborates criminal purpose."

{¶ 54} In case No. CR–485157, the indictments for felonious assault identified the deadly weapon as an automobile and the victims as peace officers Kubas, Spahia, Lucarelli, Barton, and Gomillion.

{¶ 55} In *State v. Young*, Cuyahoga App. No. 91007, 2008-Ohio-6158, 2008 WL 5050129, we upheld a conviction for vehicular assault when the evidence showed that although nobody was hit by defendant's car, the defendant was driving

erratically immediately following a domestic-violence situation. The defendant argued at trial that he was attempting to leave the scene. However, the state's witnesses testified that the defendant "revved the engine, quickly drove backward then forward, made a wide turn, and drove the car up the curb, over the sidewalk, and through a fence," toward family members standing on the front porch of their house. Testimony also revealed that if one of them had not pushed another out of the way, the defendant's car would have hit someone. Id. at ¶ 7. See also *State v. Cash*, Lucas App. No. L–03–1198, 2005-Ohio-1382, 2005 WL 681303 (holding that there was sufficient evidence to support a conviction of felonious assault of a peace officer when testimony showed that "all of the officers believed that appellant was attempting to hit their vehicles in order to escape. Furthermore, they testified that they believed they avoided a collision solely because they took evasive action").

{¶ 56} In the instant case, Officer Kubas testified that during the high-speed chase, defendant swerved his vehicle toward the marked police car that Officers Kubas and Spahia were in, causing them to drive off the side of the road. Additionally, Officer Lucarelli testified that defendant's car swerved toward his police car, and Lucarelli had to take evasive action to avoid an accident. Finally, multiple officers testified that defendant drove his vehicle straight toward Officers Gomillion's and Barton's police cars, which were parked on the Eddy Road exit ramp of I–90, that the officers moved their vehicles out of the way when it became apparent that defendant was not going to stop, and that defendant's car just missed hitting the vehicles. The evidence also showed that defendant was traveling between 70 and 90 miles per hour during this chase. Defendant did not present anything to contradict this evidence.

{¶ 57} We find this evidence sufficient to support a conviction of felonious assault, as defendant knowingly attempted to harm five peace officers with his car during a high-speed chase. Compare with *State v. Tate* (1978), 54 Ohio St.2d 444, 446, 8 O.O.3d 441, 377 N.E.2d 778 (holding that the state presented sufficient evidence of felonious assault "where the record demonstrates that the accused pointed a gun at another person, but it is undisputed that the gun was unloaded, that the accused knew it was unloaded, and that the accused made no attempt to pull the trigger or to use the weapon in any other manner as a deadly weapon").

### Having a weapon while under disability; sufficiency of the evidence (case No. CR–485158)

{¶ 58} Defendant was indicted for having a weapon while under disability at the time of the July 12, 2006 collision. R.C. 2923.13(A)(2) states that no person shall have a firearm if the "person is under indictment for or has been convicted of any felony offense of violence." It is undisputed that on July 12, 2006,

defendant was under indictment in Cuyahoga County Common Pleas case No. CR–482489 for aggravated robbery, which is an offense of violence. Additionally, defendant had multiple felony convictions prior to the collision and at least two felony cases pending in the Cuyahoga County Court of Common Pleas on July 12, 2006. However, defendant argues that the state did not present evidence that he was aware of the indictment in case No. CR–482489 on July 12, 2006. The state does not respond to this argument on appeal.

{¶ 59} In *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, the Ohio Supreme Court held that the state was required to prove that a defendant acted recklessly regarding his awareness of being under indictment as an element of having a weapon while under disability. *Clay* was decided while the instant case was pending on appeal and defendant did not raise this issue in the trial court. Therefore, a plain-error analysis applies. Crim.R. 52(B).

{¶ 60} On June 23, 2006, defendant was indicted in case No. CR–482489 for offenses committed on May 22, 2006. Subsequently, a capias was issued for his arrest, and the joint fugitive task force was brought in. When surrounded by police cars on July 10 and July 12, 2006, defendant attempted to flee the scene and assault the officers. A rational trier of fact could infer from defendant's conduct that he knew he was under indictment.[3]

{¶ 61} Furthermore, the charge of having a weapon while under a disability in case No. CR–485158 was tried to the court, and the parties stipulated to defendant's prior convictions. We find this evidence sufficient to show that defendant was aware, or was reckless regarding his awareness, of being under indictment or having been convicted of a violent felony as an element of having a weapon while under a disability, pursuant to R.C. 2923.13(A)(2).

### *Vandalism; sufficiency of the evidence (case No. CR–485158)*

{¶ 62} R.C. 2909.05(B)(2) states, "No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a government entity." Defendant argues that there was no evidence that the Chevy Tahoe driven by Det. Domonkos, which was damaged in the July 12, 2006 collision, belonged to the government.

{¶ 63} However, Det. Domonkos testified that on July 12, 2006, he was assigned to the FBI/Cuyahoga County fugitive task force and that he was working with other peace officers from the task force to apprehend defendant after he was seen at 18510 Euclid Avenue, in Cleveland. Det. Domonkos testified that he was operating a 1999 Chevy Tahoe, which he identified in pictures as the same vehicle that defendant's car ran into. Furthermore, Special Agent Torsney

---

**3.** See fn. 2, supra.

testified that Det. Domonkos "had a good undercover vehicle, some type of SUV," on July 12, 2006, which was struck by defendant's car that day. We find this to be sufficient evidence to show that the Chevy Tahoe was owned, leased, or controlled by a government entity.

{¶ 64} Accordingly, assignments of error III, IV, VI, and VII are without merit.

### Allied offenses (case No. CR–485158)

{¶ 65} Assignment of error VIII states:

{¶ 66} "VIII. The convictions for counts five and six, assaults on a peace officer must be vacated because they are duplicitous of counts three and four, felonious assaults on the same police officers."

{¶ 67} R.C. 2941.25 prohibits an offender from being convicted of two or more allied offenses of similar import. The two-part test for determining whether crimes are allied offenses is as follows: (1) The elements of the two offenses are compared to see if they correspond to such a degree that the commission of one will result in the commission of the other; if so, the crimes are allied offenses of similar import; (2) the defendant's conduct is reviewed to determine whether the crimes were committed separately or under a separate animus; if so, the defendant may be convicted of both offenses. *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816.

{¶ 68} In case No. CR–485158, defendant was convicted of, inter alia, two counts of felonious assault in violation of R.C. 2903.11(A)(2), which makes it unlawful to "[k]nowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." The victims of these two counts were Special Agent Torsney and Det. Domonkos. Defendant was also convicted of two counts of simple assault in violation of R.C. 2903.13(A), which makes it unlawful to "knowingly cause or attempt to cause physical harm to another." The victims of these two counts were also Special Agent Torsney and Det. Domonkos.

{¶ 69} The state argues that the felonious-assault convictions are based on defendant's attempting to cause harm using his motor vehicle, while the assault convictions are based on defendant's actually harming the two officers. Neither party cites any relevant case law to support the arguments.

{¶ 70} In *State v. Breeden*, Cuyahoga App. No. 84663, 2005-Ohio-510, 2005 WL 315370, this court held that simple assault in violation of R.C. 2903.13(A) is a lesser included offense of felonious assault in violation of R.C. 2903.11(A)(2). "The distinguishing element between felonious assault * * * and assault * * * is whether the actor used a deadly weapon." Id. at ¶ 55. By committing felonious

assault under R.C. 2903.11(A)(2), an offender necessarily commits simple assault in violation of R.C. 2903.13(A). Thus, the crimes are allied offenses of similar import, which meets the first part of the *Blankenship* test. See *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 39 (holding that R.C. 2903.12(A)(1) and (2)—two subdivisions of aggravated assault—are allied offenses because "[t]hese subdivisions set forth two different forms of the same offense, in each of which the legislature manifested its intent to serve the same interest—preventing physical harm to persons").

{¶ 71} In reviewing the record to determine whether the crimes were committed separately or with a separate animus, we find evidence that defendant's car struck Special Agent Torsney and then ran into Det. Domonkos's SUV while the detective was getting out of the vehicle. These events happened one after the other, in the same location, after defendant accelerated his car, against multiple peace officers' warnings, in an attempt to flee from the authorities without concern for who or what was in his way. We hold that defendant's actions are one course of criminal conduct, as the state failed to show more than one animus. See *State v. Cotton*, 120 Ohio St.3d 321, 2008-Ohio-6249, 898 N.E.2d 959; *State v. Minifee*, Cuyahoga App. No. 91017, 2009-Ohio-3089, 2009 WL 1819493, at ¶ 106 (holding that two counts of felonious assault are allied offenses of similar import "where the evidence establishes a single animus concerning the assault of a single victim").

{¶ 72} Defendant may be convicted of one form of assault per victim because the "convictions arise from a single act and animus." *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 41. The *Brown* court further held, "[T]he proper disposition of matters involving allied offenses of similar import committed with a single animus is to merge the crimes into a single conviction. * * * Thus, upon remand for merger and resentencing the State must elect which of [defendant's] two assault charges will merge into the other for purposes of * * * conviction and sentence." Id. at ¶ 42–43. See also *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, at ¶ 20, reaffirming the holding of *Cotton* that "convictions for felonious assault defined in R.C. 2903.11(A)(1) and felonious assault defined in R.C. 2903.11(A)(2) are allied offenses of similar import, and therefore a defendant cannot be convicted of both offenses when both are committed with the same animus against the victim."

{¶ 73} Assignment of error VIII is sustained. Accordingly, we reverse and remand to direct the trial court to vacate both the finding of guilt and the sentence in one of the assault convictions against Special Agent Torsney and one against Det. Domonkos.

*Admissibility of evidence (case Nos. CR–485157 and CR–485158)*

{¶ 74} In assignment of error IX, defendant states:

{¶ 75} "IX. Mr. Anderson was deprived of a fair trial by mention of the indictment in CR–482489 and by the repeated testimony of various law enforcement witnesses that suggested he had committed other crimes of a serious and/or violent nature."

{¶ 76} The court joined for trial case Nos. CR–485157 and CR–485158, which are both the subject of this appeal, along with case No. CR–482489, which has since been dismissed. As discussed earlier in this opinion, case No. CR–482489 concerned aggravated-robbery charges with firearm specifications. Before voir dire began, the court read the indictments in all three cases to the potential jurors. The next morning, however, the state dismissed case No. CR–482489 because the victims/witnesses refused to cooperate. The court asked if defense counsel had any objections. Counsel replied that he did not. Additionally, defendant did not request a limiting instruction pursuant to Evid.R. 105 admonishing the jury to disregard the indictment in case No. CR–482489. Therefore, we review this issue for plain error pursuant to Crim.R. 52(B).

{¶ 77} Defendant now argues that the court should have dismissed the venire and begun anew or advised the jury, once convened, that the aggravated-robbery charges against him had been dropped. To support this argument, defendant cites violations of Evid.R. 403 and 404, which preclude the admissibility of prejudicial evidence and evidence of the accused's prior bad acts or bad character.

{¶ 78} Two or more indictments may be tried together "if the offenses * * * could have been joined in a single indictment." Crim.R. 13. See also Crim.R. 8.

{¶ 79} Evid.R. 403(A) states, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury." Evid.R. 404(B) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 80} At the time the court read the indictment in case No. CR–482489 to the jury, the charges were part of the three cases that had been joined for trial, and admissibility was proper. We focus on whether it was plain error for the court to fail to give the jury instructions to disregard the dismissed charges. This court ruled on a very similar issue in *State v. Morrow*, Cuyahoga App. No. 79738, 2002-Ohio-5320, 2002 WL 31195362, at ¶ 20–22:

{¶ 81} "Morrow argues the trial court erred by failing to instruct the jury to disregard its voir dire comments regarding his prior conviction which formed the basis of the 'having a weapon under a disability' charge when that issue was being tried by the bench rather than the jury. We disagree.

{¶ 82} "Morrow failed to request a jury instruction pertaining to his argument here; thus, we again apply the principles of plain error and examine all properly admitted evidence and determine whether the jury would have convicted Morrow even if the alleged error had not occurred.

{¶ 83} "Even had the court instructed the jury to disregard count four of the indictment and the court's statements thereon, we cannot reasonably conclude the outcome of the trial would have been different. Morrow argues statement of his past conviction prejudicially effected the outcome of the trial by putting his character in issue in violation of Evid.R. 404(B). We are unpersuaded because the trial court read the indictment during voir dire, not during trial. Thus, the trial court did not accept the statement regarding Morrow's past conviction into evidence. Because the statement held no evidentiary value[,] a jury instruction on the matter would have no effect. Accordingly, we determine no error exists and Morrow's second assigned error is without merit." (Footnote omitted.)

{¶ 84} Following our holding in *Morrow*, we find no error with the court's statements concerning case No. CR–482489 during voir dire, nor do we find error with the failure to give a limiting jury instruction regarding the statements.

{¶ 85} The second issue defendant argues under this assignment of error is that the following testimony of law-enforcement officers was inadmissible under Evid.R. 403 and 404.

{¶ 86} Asked why the dangerous high-speed chase involving defendant was not called off by the authorities, Officer Legg replied, "The information that we had pertaining to the nature of the warrants that this individual was wanted on."

{¶ 87} Asked to explain the purpose of the joint fugitive task force, Sgt. Sharpe stated: "It's a joint agency with the FBI, the sheriff's office, Cuyahoga County, Cleveland police, Metropolitan Housing Authority. And what we do is we go after the serious of serious felonies, murderers, armed robbers, those types of crimes." The colloquy continued:

{¶ 88} "Q: People who are wanted for having committed those crimes?

{¶ 89} "A: Yes.

{¶ 90} "Q: Drawing your attention to the date of July [12]th of 2006, were you working with these individuals?

{¶ 91} "A: Yes, I was. Yes.

{¶ 92} "Q: And were you assigned or did you have anybody in mind that you were looking for on that day?

{¶ 93} "A: That would be Jamal Anderson."

{¶ 94} Asked what his duties or functions were with the FBI, Special Agent Torsney replied, "Well, I'm assigned to the violent crime squad in the FBI office here in Cleveland, and I also am the coordinator for the fugitive task force, which involves locating, apprehending fugitives in conjunction with the sheriff's office and Cleveland police officers. We all work together in an attempt to locate and apprehend violent fugitives here in the city."

{¶ 95} In *Huddleston v. United States* (1988), 485 U.S. 681, 691–692, 108 S.Ct. 1496, 99 L.Ed.2d 771, the United States Supreme Court set forth four sources from which a defendant's protection arises against unduly prejudicial evidence that might be introduced under Fed.Evid. R. 404(b): [4]

{¶ 96} "[F]irst, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, see Advisory Committee's Notes on Fed.Rule Evid. 404(b), 28 U.S.C.App., p. 691; S.Rep. No. 93–1277 at 25; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. See *United States v. Ingraham*, 832 F.2d 229, 235 (C.A.1, 1987)." (Footnote omitted.)

{¶ 97} In the instant case, evidence of defendant's "fugitive" or "violent criminal" status was admitted for a purpose other than "to punish the defendant for the similar rather than the charged act, or [to show] that the defendant is an evil person inclined to violate the law." *Huddleston*, 485 U.S. at 686, 108 S.Ct. 1496, 99 L.Ed.2d 771. The testimony was elicited, in part, to show defendant's state of mind in leading police on a high-speed car chase that resulted in defendant's convictions for assault and failure to comply with the order or signal of a police officer. See R.C. 2921.331 (requiring evidence that a defendant "willfully" eluded or fled from the police to sustain a conviction for the offense of failure to comply with the order or signal of a police officer). In other words, this testimony serves as a background or foundation for the trigger that set in motion defendant's course of criminal conduct. As such, the testimony was offered for a

---

4. The Ohio Rules of Evidence, which are applicable in the instant case, generally mirror the Federal Rules of Evidence.

proper purpose, and it was relevant in that it made the existence of a material fact, i.e., defendant's state of mind, more or less probable.

{¶ 98} However, Evid.R. 403 allows exclusion of relevant evidence if the relevancy is outweighed by the potential of prejudicial effect. While we are aware of the potential prejudice of testimony that defendant was wanted by the police, we find that this does not outweigh the probative nature of the evidence that is the basis of the cases before us. The chase and the collision would not have occurred but for defendant's status as a fugitive from justice. See *State v. Williams* (1997), 79 Ohio St.3d 1, 11, 679 N.E.2d 646, quoting 2 Wigmore, Evidence (3d Ed.) 111, Section 276. (" ' "It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself" ' ".)

{¶ 99} Assignment of error IX is overruled.

### *Jury instructions regarding stipulations (case No. CR–485158)*

{¶ 100} Defendant's tenth assignment of error states as follows:

{¶ 101} "X. The trial court violated Mr. Anderson's Federal and State constitutional rights to trial by jury and due process when it directed the jury that it must accept stipulated facts as having been proven."

{¶ 102} Defendant argues that the court's jury instruction regarding the parties' stipulation that the firearm found in defendant's car was operable and the drugs found in the car were crack cocaine was erroneous. The court stated the following: "These stipulations were reached between the State and the defendant and they are to be accepted by you as fact. No further evidence need be brought on these issues." According to defendant, this is a structural or plain error, because a "failure to submit for the jury's consideration the elements of the crime charged" violates his constitutional right to a trial by jury.

{¶ 103} In our view, defendant misconstrues the law. Due process requires that a jury consider all elements of the crimes charged, absent a valid jury waiver. See R.C. 2945.11 ("In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict"). Consideration of the evidence by a jury is compromised when the state withholds or does not present evidence or when the trial court fails to instruct a jury regarding a stipulated fact. See *State v. Fatica* (Oct. 15, 1999), Geauga App. No. 93–G–1799, 1999 WL 959838.

{¶ 104} In the instant case, the court properly handled the parties' stipulation. We reviewed a strikingly similar situation in *State v. Dowd*, Cuyahoga App. No. 80990, 2002-Ohio-7061, 2002 WL 31838695. In *Dowd*, the defendant assigned as

error that "the court improperly instructed the jury that it must accept as proven the stipulation" that a certain fingerprint belonged to the defendant. We noted as follows: "A stipulation in law is nothing more than an agreement between counsel as to a fact which is not disputed and for which no evidence need be presented because neither side disputes that fact."

{¶ 105} The *Dowd* court held that there was no error in the court's jury instruction regarding the stipulation, which reads as follows: "There was an agreement as to the thumbprint that was compared, that it was the defendant's. That's all. * * * Now, no further evidence need be brought in on the stipulation. It was an agreed to fact. You are here to find disputed facts not agreed to facts. There is nothing to decide on agreed facts, you just have to accept it." See also *State v. McMannis* (Apr. 14, 2003), Stark App. No. 2002CA00258, 2003 WL 1874723 (upholding a preliminary jury instruction that "if the attorneys agree to any facts, such agreement, stipulation, or admission of fact will be brought to the jury's attention and they may then regard such fact as conclusively proved without the necessity of further evidence of such fact").

{¶ 106} Based on our holding in *Dowd*, assignment of error X is overruled.

### Adequacy of verdict form (case No. CR–485157)

{¶ 107} In assignment of error XI, defendant states:

{¶ 108} "XI. The verdict forms setting forth the peace officer specifications were inadequate to justify an enhancement of the underlying felonious assault convictions."

{¶ 109} Specifically, defendant argues that the jury's verdict forms "do not reflect that the peace officers were acting in the performance of their duties" and that the degree of all assault convictions should be reduced accordingly. The state does not address this assignment of error on appeal.

{¶ 110} However, the jury's verdict forms in case No. CR–485158 for the "further finding" of each assault count read as follows: "We, the Jury, further find and specify that the defendant * * * did assault a peace officer while in performance of his official duties as charged in * * * the indictment." Therefore, this assignment of error does not apply to the assault convictions in case No. CR–485158.

{¶ 111} In case No. CR–485157, the jury's verdict forms for the "further finding" of each count of assault read as follows: " We, the Jury, further find and specify that the Defendant * * * did assault a peace officer as defined in Section 2935.01." Pursuant to R.C. 2903.11(D)(1)(a), felonious assault is a second-degree felony; however, if the victim is a peace officer, the assault becomes a first-degree felony.

{¶ 112} In *State v. Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, at ¶ 14, the Ohio Supreme Court held that "pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense."

{¶ 113} *Pelfrey,* and most subsequent cases applying *Pelfrey,* revolve around verdict forms that state neither the degree of the offense nor an enhancing factor. For example, in *Pelfrey,* the defendant was convicted of tampering with records, which is a first-degree misdemeanor. However, the offense may be enhanced to a third-degree felony if the records tampered with were governmental in nature. Although the evidence showed that the defendant tampered with government records, the verdict form was silent on this aggravating element. No mention was made of the degree of the offense or the fact that the records belonged to the government. The Ohio Supreme Court held that the defendant in *Pelfrey* could be convicted of only the least degree of the offense, which is a first-degree misdemeanor. Id. at ¶ 13.

{¶ 114} In the instant case, we find that the phrase "a peace officer as defined in Section 2935.01" is a sufficient statement of the aggravating element to withstand scrutiny under *Pelfrey.* The jury verdict forms were adequate to convict defendant of first-degree felonies.

{¶ 115} Assignment of error XI is overruled.

### *Ineffective assistance of counsel (case Nos. CR–485157 and CR–485158)*

{¶ 116} Assignment of error XII reads as follows:

{¶ 117} "XII. Mr. Anderson received the ineffective assistance of counsel."

{¶ 118} To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407. In *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if a defendant fails to prove the second prong of prejudicial effect. *State v. Bradley.* " 'The object of an ineffectiveness claim is not to grade counsel's performance.' " Id. at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 119} In the instant case, defendant argues that his trial counsel's performance was ineffective because he failed to object to various alleged errors as asserted on appeal. Specifically, defendant notes the failure to object to improper character evidence elicited by peace officers and failure to request a jury instruction regarding the dismissal of case No. CR–482489.

{¶ 120} Because we rejected these lines of argument in defendant's ninth assignment of error, we conclude that the same allegations do not amount to ineffective assistance of counsel. See *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶ 231 (holding that when a defendant "has not pointed to any specific evidence that was improperly admitted because of counsel's failure to object," a defendant fails to establish ineffective assistance of counsel).

{¶ 121} Accordingly, assignment of error XII is overruled.

{¶ 122} The judgment is affirmed in part and reversed in part, and the court is remanded for merger and resentencing regarding the assault and felonious assault convictions for Counts 3, 4, 5, and 6 in case No. CR–485158.

Judgment affirmed in part
and reversed in part,
and cause remanded.

GALLAGHER, P.J., and JONES, J., concur.