[Cite as *State v. Devaughn*, 2020-Ohio-651.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180586 |
| | | TRIAL NO. B-1802657 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DARRIS DEVAUGHN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part and Reversed and Appellant Discharged in Part,

Date of Judgment Entry on Appeal:  February 26, 2020


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Brandon A. Moermond*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Darris Devaughn was charged with four counts of felonious assault for attempting to cause physical harm to four peace officers by means of a motor vehicle, all felonies of the first degree, two counts of failure to comply with an order or signal of a police officer, both felonies of the fourth degree, one charge of possession of cocaine, a third-degree felony, one charge of trafficking in cocaine, a felony of the third degree, one charge of possession of heroin, a felony of the fifth degree, and four counts of aggravated possession of drugs, all fifth-degree felonies.

{¶2} In three assignments of error, he contends that the convictions were contrary to the manifest weight of the evidence, the convictions were based upon insufficient evidence, and the court's cumulative errors deprived Devaughn of a fair trial. For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed in part.

## Factual Background

{¶3} All of the charges stemmed from an undercover investigation conducted by the Cincinnati Police Department on April 25, 2018. Darris Devaughn pled not guilty and proceeded to a bench trial. The state presented the testimony of the four officers who were working undercover that day, Officer Nicholas Casch, Officer Kenneth Dotson, Officer Brandon Dean, and Officer Brian Follrod. All of the officers explained that they were conducting surveillance because the police received a tip from a confidential informant that drugs were being stored that day in a Mazda parked on Hemlock Street. The statements were admitted to explain their investigative actions, and not for the truth of the matter asserted. The four officers testified as follows.

{¶4} All four officers were in a black Toyota minivan a few blocks from

Hemlock Street. Their sergeant and other officers were observing the Mazda and relaying information to them through the radio. They had been sitting in the van for an hour or two, when they heard that someone, eventually identified as Devaughn, had parked a gold Honda behind the Mazda. Devaughn got out of the Honda, opened the door to the Mazda, and leaned into the Mazda.

{¶5} The undercover officers contacted uniformed officers from District Four. The initial plan was to have the uniformed officers respond to the scene to initiate a stop. However, the uniformed officers were too far away, so the undercover officers decided to initiate the stop. When they approached, Devaughn was walking toward the Honda. They parked next to the Honda, and jumped out of the minivan. They identified themselves as police officers and ordered Devaughn to stop.

{¶6} Although the officers were not in uniform, they were wearing tactical vests with the word "Police" on the front and back. They also had their badges displayed on their belts and their guns drawn. While they repeatedly ordered Devaughn to stop, he jumped into the driver's seat and locked the door. According to Officer Casch, Devaughn looked directly at them as they shouted. The officers were standing in front of the car and on the driver's side of the car while ordering him to stop.

{¶7} Because the window tint was so dark, they could not see into the vehicle. Officer Dotson went to the front of the car and ordered Devaughn to show his hands. Officer Follrod tried to open the door, but it was locked. At that point, Devaughn started the car, put it into reverse, backed up over the sidewalk and shifted into drive. The car took off at a high rate of speed toward the officers.

{¶8} All of the officers had to jump out of the way to avoid being hit. Officer

Dotson fell into Officer Dean as they both tried to escape. Officer Follrod, who was attempting to break the driver's window, had the window-breaker tool ripped out of his hand after breaking the back driver's side window. He was less than a foot away from getting hit.

{¶9} After Devaughn sped off, Officer Dotson searched the Mazda. He found torn-up lottery tickets in the cup holder, and drugs and a scale with residue in the center console. A lab analysis identified .555 grams of acetyl fentanyl mixed with fentanyl and cocaine in a partial bag contained within a partial bag, 17.038 grams of cocaine contained in a second partial plastic bag, and .19 grams of a mixture containing U-47700, N-methyl norfentanyl, heroin, fentanyl and cocaine found on the digital scale. The drugs were not packaged in individual bags. Officer Dotson testified that, in his opinion, the amount of drugs found in the Mazda was not for personal use. On cross-examination, he admitted that he did not see any activity that day to indicate drug trafficking from the Mazda.

{¶10} Officer Casch testified that they had run the license plates on the Mazda. Although he could not remember who the car was registered to, he had seen Devaughn in the Mazda on previous occasions.

{¶11} After Devaughn left the scene, the undercover officers had uniformed officers attempt to locate him. The Honda was found abandoned four blocks away with the driver's door opened. The car had crashed through a fence. Officer Dotson searched the Honda and found $1,000 sticking out of the passenger's-side visor. He believed that amount of money suggested drug sales.

{¶12} After the officers testified, the state rested. Misty Watson testified on behalf of Devaughn. Watson was present that day, sitting in her car, which was

4

parked behind Devaughn's Honda. She did not know Devaughn but recognized him from the neighborhood.

{¶13} She observed Devaughn coming out of a store and getting into a gold, four-door Honda with tinted windows. A few seconds later, a black minivan came around the corner and four guys jumped out of the van with guns and bullet-proof vests. They pulled their guns and told Devaughn to get out of the car. Devaughn drove off and turned right on McMillan.

{¶14} She testified that the Honda's engine was running when the minivan pulled up toward the driver's door. After the men jumped out, Devaughn pulled away from the curb and drove away slowly. She heard them ordering Devaughn out of the car. She further testified that because she did not see the word "police" on their vests, she would have been scared and would have believed that the men were trying to rob her.

{¶15} After her testimony, the defense rested. The trial court found Devaughn guilty of all charges and sentenced him to an aggregate term of 17 years and 6 months.

### Sufficiency and Manifest Weight

{¶16} In his first and second assignments of error, Devaughn argues that his convictions were against the manifest weight of the evidence and based upon insufficient evidence. For ease of discussion, the assignments of error will be addressed together.

{¶17} When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in

resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶18} Witness credibility is an issue for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001). "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30, citing *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047,¶ 20.

{¶19} "A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118. "In reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

1. Felonious-Assault Convictions

{¶20} Devaughn first argues that the convictions were not supported by the manifest weight of the evidence because the officers' testimony that they were readily

identifiable as police officers was contradicted by the testimony of Watson. However the trial court was in the best position to determine the witnesses' credibility and rationally could have believed the officers' testimony.

{¶21} Devaughn next contends that the evidence was insufficient to support his felonious-assault convictions because he was acting recklessly, and not knowingly, in his attempt to escape the four armed men.

{¶22} R.C. 2903.11(A)(2), provides that: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶23} All four officers testified that they approached Devaughn wearing vests that were clearly marked "Police." They repeatedly identified themselves as police officers and ordered Devaughn to stop and exit from the car. Officer Casch testified that Devaughn looked directly at them as they shouted. Disregarding the commands, Devaughn backed up onto the sidewalk, pointed the front end of his car toward the officers, squealed the tires, and drove forward at a high rate of speed. All four officers were required to take evasive action to avoid being hit.

{¶24} Based on this evidence, the trial court could have found that Devaughn was aware that his conduct would probably result in harm to another, and that he therefore knowingly attempted to harm the officers with his car when he drove toward them at a high rate of speed.

**{¶25}** Devaughn further argues that the state failed to prove that he knew the men were police officers. However, the peace-officer penalty enhancement does not require proof of a mental state. *See State v. Derkson*, 1st Dist. Hamilton No. C-130844, 2014-Ohio-3831, ¶ 16; *State v. Anderson*, 183 Ohio App.3d 522, 2009-Ohio-3900, 917 N.E.2d 843, ¶ 32.

**{¶26}** We cannot say that the court lost its way and created a manifest miscarriage of justice or that Devaughn's convictions for felonious assault were not supported by sufficient evidence.

2. Failure-to-Comply-with-Order-of-Police-Officer Convictions

**{¶27}** Next, Devaughn challenges the manifest weight and sufficiency of the evidence to support his convictions for failure to comply with the order of a police officer. R.C. 2921.33(B) states "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

**{¶28}** Again, Devaughn argues that Watson's testimony was more credible than the officers' testimony and that the state failed to prove that Devaughn knew they were officers. Because issues of witness credibility are for the trier of fact to resolve, we cannot conclude that the factfinder lost its way and created a manifest miscarriage of justice. *See State v. Issa*, 93 Ohio St.3d at 67, 752 N.E.2d 904.

**{¶29}** The officers' testified that Devaughn refused to stop and exit from his car and instead drove toward them. They further testified that they were wearing police vests and their badges and identified themselves as officers numerous times. Thus sufficient evidence existed to convict Devaughn of two counts of failure to comply with an order or signal of a police officer.

3. Drug-Possession-and-Trafficking Convictions

**{¶30}** In essence, Devaughn is arguing that the evidence was insufficient to prove that he constructively possessed the drugs that were discovered in the Mazda. Specifically, he contends that the state failed to prove that he knew about the drugs found in the center console or that he exercised control or dominion over the drugs.

**{¶31}** R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.03(A)(2) provides: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

**{¶32}** Possession occurs when an individual has "control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive and may be proven by circumstantial evidence. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). A person is in "constructive possession" if he is able to exercise dominion and control over an item, even if he does not have immediate physical possession of it. *Id.* at syllabus, *overruled on other grounds*, *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), syllabus. For constructive possession to exist, the person must be conscious of the presence of the object. *Id.* at 91. Otherwise, a conviction could be based upon drugs placed by another. *See id.*

{¶33} "A defendant's mere presence in an area where drugs are located is insufficient to demonstrate that the defendant constructively possessed the drugs." *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 40; *State v. Mitchell*, 190 Ohio App.3d 676, 2010-Ohio-5430, 943 N.E.2d 1072, ¶ 6 (1st Dist.) (concluding that the state failed to prove a back-seat passenger constructively possessed the marijuana found in the pocket on the back of the driver's seat because it was accessible to all of the occupants of the car); *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 1-2 (4th Dist.) (finding that the evidence was insufficient to prove constructive possession because the only evidence linking the passenger to the drugs that were concealed in the bed of the truck was his presence as a passenger in the truck, his nervousness, and his denial of ownership of the items in the bed); *State v. Smith*, 3d Dist. Logan No. 8-04-40, 2005-Ohio-3233, ¶ 7 (evidence of mere presence in a small room where drugs were located in plain view was not sufficient to prove possession).

{¶34} The proximity to the contraband must be "coupled with another factor or factors probative of dominion and control over the contraband." *Kingsland* at ¶ 13; *State v. Davis*, 10th Dist. Franklin No. 98AP-192, 1998 WL 655396 (Sept. 24, 1998) (stating that it is reasonable to infer that defendant knowingly possessed cocaine when he was sitting in the rear right seat of the officer's cruiser, the cocaine was found at the right rear seat, and there was no contraband in the cruiser before defendant was placed in the back seat); *State v. Williams*, 4th Dist. Ross No. 03CA2736, 2004-Ohio-1130 (concluding that constructive possession was established when the driver had easy access to the drug, the drug was located in the

10

center console directly on top of a receipt bearing the driver's name and his ownership of the vehicle, and the officers smelled burnt marijuana in the vehicle).

{¶35}   In this case, the car where the drugs were found was not registered to Devaughn.  There was no testimony that he had ever driven the car or possessed the keys to the car.  The officers who saw Devaughn lean into the car did not testify, so the record contains no evidence regarding how far he leaned into the car, how long he leaned into the car, or whether he made any furtive movements while leaning into the car.  The state did not present any DNA or fingerprint evidence connecting him to the center console where the drugs were found or connecting him to the drugs and scale that were found in the console.  Finally, the state did not present any evidence that Devaughn placed any items into the car or removed any items from the car.

{¶36}  Although Devaughn had been in the car on prior occasions, his mere presence in the car is insufficient to show knowledge that drugs would be in the car at some time in the future or to establish that he could exercise control or dominion over drugs that may be found in the future.  Moreover, there is no indication that drugs were present in the car on those previous occasions.

{¶37}   Leaning into the car established proximity to the drugs, but the record is devoid of any additional factor to show he exercised control or dominion over the drugs in the center console or that he knew the drugs were in the center console.  The evidence did not establish that he leaned in far enough to be able to access the drugs, and the record contains no evidence that he opened the center console.  As a matter of law, the state failed to prove that Devaughn constructively possessed the drugs. *See Mitchell*, 190 Ohio App.3d 676, 2010-Ohio-5430, 943 N.E.2d 1072 at ¶ 7.

{¶38} Accordingly, we overrule his first assignment of error and sustain in part and overrule in part his second assignment of error.

## Cumulative Error

{¶39} In his third assignment of error, Devaughn alleges that the cumulative effect of all of the evidentiary errors denied him the right to a fair trial. Basically, he claims that the trial court repeatedly erred by allowing each officer to testify that he was present at the scene due to a tip from a confidential informant.

{¶40} However, the trial court specified that the testimony was admitted solely to explain the officers' presence and would not be considered for the truth of the matter asserted. When an out-of-court statement is received for a purpose other than the truth of the matter asserted, the content is not substantive evidence and may not be used as substantive proof of the charged offense. *See State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 422, ¶ 27 (6th Dist.). Statements offered for a purpose other than their truth are not hearsay under Evid.R. 801(C). *See State v. Davis*, 62 Ohio St.3d 326, 344, 581 N.E.2d 1362 (1991). Accordingly, we find no merit to the third assignment of error.

## Conclusion

{¶41} For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. We affirm the judgment with respect to counts 1-6, the felonious-assault and failure-to-comply-with-order-of-police-officer convictions, and we reverse the convictions in counts 7-12, trafficking in cocaine, possession of cocaine, possession of heroin, and four counts of aggravated possession of drugs, and Devaughn is discharged from further prosecution on those counts.

Judgment accordingly.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry this date.